COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DEITRICH RAESHAWN SANDERS,

Defendant-Appellant.

UNPUBLISHED
November 21, 2017

No.  332895
Macomb Circuit Court
LC No.  2015-002095-FC

Before:  BECKERING, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of carjacking, MCL 750.529a, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 300 to 600 months' imprisonment for his carjacking conviction and two years' imprisonment for his felony-firearm conviction.  We affirm.

## I.  FACTUAL BACKGROUND

At approximately 5:40 a.m., the victim, Cara Jones, walked from her house to the vehicle in her driveway.  Jones had already started the vehicle remotely.  As Jones opened the driver-side door, defendant walked up and demanded that she hand over her keys and purse.  Defendant wore a hoodie with what looked like a mask around his mouth, and he was wielding a gun that resembled an Uzi.  Jones complied, and defendant jumped in the driver seat; however, he hit the brake, and because the vehicle was started remotely, it instantly stalled.  Defendant fled on foot and was apprehended shortly thereafter.

At trial, Police Detective Steven Dzierzawski testified about three videos of defendant. The first video captured defendant in the back of the police car where he used his left hand to remove a cloth from his pocket and put it down the front of his pants.  Dzierzawski opined that defendant likely used the cloth as a mask during the carjacking.  The second video captured defendant standing next to the jail toilet.  Although defendant's back was to the camera, Dzierzawski believed defendant discarded the cloth in the toilet.  The third video was a police interview with defendant.  Dzierzawski explained that defendant's demeanor during the interview suggested he was being untruthful during the interview.  At the conclusion of trial, the jury convicted defendant of carjacking and felony-firearm.

-1-

## II. PROSECUTORIAL MISCONDUCT

Defendant contends that the prosecution improperly elicited opinion and conclusory testimony from Dzierzawski. While Dzierzawski provided improper testimony, defendant is not entitled to relief.

Defendant did not object to the prosecutor's statements; therefore, this issue is unpreserved. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). "Generally, a claim of prosecutorial misconduct is a constitutional issue that is reviewed de novo, but a trial court's factual findings are reviewed for clear error." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). However, because the challenge is unpreserved, appellate review is for plain (outcome-determinative) error. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

"To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Generally, to show the error affected substantial rights, it must be proven "that the error affected the outcome of the lower court proceedings." *Id*. "Further, this Court cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Bennett*, 290 Mich App 465, 476; 802 NW2d 627 (2010).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Brown*, 279 Mich App at 134. "[A]llegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *Bennett*, 290 Mich App at 475. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Defense counsel's theory of the case was that the police had the wrong person. At issue on appeal is whether the prosecutor improperly elicited Dzierzawski's testimony about (1) defendant's attempts to hide and dispose of a cloth possibly used in the crime, and (2) testimony about defendant's demeanor during his police interview. Together, this evidence tended to show that defendant was, in fact, the perpetrator.

A police officer may provide lay testimony regarding his observations in a criminal matter and his "opinion formed as a result of those observations." *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988); see MRE 701 ("[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."). In order to support its theory of the case, the prosecution played a video of defendant hiding a cloth while alone and unsupervised in the back of the police car. Dzierzawski explained that after originally viewing the police-car video, he altered the direction of his investigation. He attempted to locate the cloth by removing the police car's back seat and watching additional videos of defendant's booking and bathroom use. After watching the bathroom video, Dzierzawski concluded that defendant possibly discarded the cloth in the toilet. Dzierzawski's opinions and conclusions as a

result of the video were properly before the jury. *Oliver*, 170 Mich App at 50. His observations and overall perception of the video tended to prove the prosecutor's theory of the case and was helpful to the determination of the facts at issue. *Id.*; MRE 701.

However, Dzierzawski's opinion testimony regarding defendant's demeanor during the interview was improper. When Dzierzawski was testifying about his interrogation of defendant, the prosecution asked Dzierzawski whether defendant gave him any responses he found concerning. Dzierzawski noted that defendant did not give a "strong denial" when questioned about his involvement in the offense. Therefore, defendant's claim of innocence and his alibi[1] were, in Dzierzawski's opinion, not credible. Certainly it was not improper to elicit testimony regarding Defendant's demeanor if, as in this case, it was rationally based on Dzierzawski's perception of defendant during the interview, and defendant's truthfulness was relevant to the prosecutor's case. See *Oliver*, 170 Mich App at 50. See also *People v McReavy*, 436 Mich 197, 203; 462 NW2d 1 (1990) (a police officer may comment on a defendant's demeanor during an interview). Dzierzawski's strayed into prohibited waters, however, by proclaiming that "[w]hen innocent people are questioned and they are in fact innocent they tend to get strong denial. They are loud. They are angry. They get upset. You are accusing them of something they did not do . . . ." The prosecution asked for a "real life situation," exemplifying Dzierzawski's point, and Dzierzawski gave a detailed anecdote about a case he had several years earlier where a suspect vehemently proclaimed his innocence during a police interrogation and it turned out that he was actually innocent. The prosecution followed up with suggestions about how defendant hypothetically could have responded to questioning instead of the way he actually responded and Dzierzawski stated, "Them are the responses I would expect from someone who is not guilty."

It is a well-established rule of law that a "witness may not opine about the defendant's guilt or innocence in a criminal case." *People v Heft*, 299 Mich App 69; 829 NW2d 266 (2012). More than a hundred years ago, our Supreme Court reversed a criminal conviction where a witness who had interviewed the victim in a criminal sexual conduct case testified, "I became satisfied that she told me the truth about the case," and when asked whether the defendant was guilty, answered, "Yes sir." *People v Row*, 135 Mich 505, 507; 98 NW 13 (1904). "[T]he issue of an accused's guilt or innocence is a question for the jury." *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985). While Dzierzawski was free to talk about his observations of defendant's conduct and his personal perceptions from the interview that explained the ensuing steps of his investigation, he was not permitted to opine about defendant's guilt. See *Heft*, 299 Mich App at 83 (finding no ineffective assistance for failing to object because "[n]either officer testified about [the defendant's] guilt in general."). By using the phrases "innocent people" and "someone who is not guilty" when describing what defendant was not acting like, Dzierzawski all but directly testified to his opinion that defendant was guilty. And although one could argue from review of the record that the prosecutor was simply trying to elicit evidence regarding Dzierzawski's observations and reasons for further investigation, the testimony Dzierzawski

---

[1] Contrary to defendant's contention that he was with his sister, Yolanda Sanders, at the time of the alleged incident, defendant's sister testified that she had not seen defendant for over a week before the carjacking.

offered was nevertheless improper, and "[p]olice witnesses have a special obligation not to venture into forbidden areas which may prejudice the defense." *People v Holly*, 129 Mich App 405, 415-416; 341 NW2d 823 (1983). Despite the improper testimony described above, defendant is unable to establish plain error with respect to his allegation of prosecutorial misconduct because a timely objection and request for a curative instruction could have cured any prejudicial effect caused by the testimony. *People v Unger*, 278 Mich App 210, 241; 749 NW2d 272 (2008).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that his trial counsel's failure to object to Dzierzawski's testimony constituted ineffective assistance of counsel. We disagree.

Defendant did not move for a new trial or a *Ginther*[2] hearing in the trial court. Therefore, this issue is unpreserved for appellate review. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). "A claim of ineffective assistance of counsel presents a mixed question of law and fact." *Brown*, 294 Mich App at 387. "This Court reviews a trial court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim." *Id*. A finding is clearly erroneous if "the reviewing court is left with a definite and firm conviction that a mistake has been made." *Lopez*, 305 Mich App at 693 (quotation marks and citation omitted). We review an unpreserved claim of ineffective assistance of counsel, as in this case, for errors apparent on the record. *Id*.

"To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was objectively unreasonable in light of prevailing professional norms; and (2) that he was prejudiced by the deficient performance." *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014). Prejudice occurs if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Vaughn*, 491 Mich 642, 671; 821 NW2d 288 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted). More specifically, there is a strong presumption that defense counsel employed effective trial strategy, *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009), and this Court "will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence," *Unger*, 278 Mich App at 242-243.

While defense counsel's performance was deficient for failing to object to Dzierzawski's testimony, defendant cannot establish a claim of ineffective assistance of counsel. In light of the overwhelming evidence of his guilt, defendant has failed to establish that there is a reasonable probability of a different outcome had defense counsel objected to the line of questioning or Dzierzawski's responses. See *Vaughn*, 491 Mich at 671.

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

Ample evidence was provided at trial to prove that defendant was guilty of the charged crimes. Specifically, the victim identified defendant by voice and appearance. Additionally, Sanders's testimony established that defendant lied when he claimed Sanders was his alibi. Furthermore, after reviewing the video of defendant in the back seat of the police car, a jury could have reasonably concluded that defendant attempted to hide the cloth used to cover his face during the carjacking. After a review of defendant's recorded interview, the jury could reasonably have inferred, based on defendant's evasiveness and deceit, defendant had lied about whether he was at the scene of the crime. The recovered gun, which matched the victim's description, was found at the exact location where defendant acknowledged he first saw the police. Therefore, defendant was not prejudiced, and he has not overcome the presumption that he received the effective assistance of counsel. See *Eisen*, 296 Mich App at 329.

## IV. SCORING ERROR

Defendant contends that the trial court erred when it assessed 15 points for offense variable (OV) 10 because he did not engage in predatory conduct. We disagree.

"[T]he proper interpretation and application of the legislative sentencing guidelines . . . are legal questions that this Court reviews de novo." *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

MCL 777.40 governs OV 10 and provides, in relevant part:

(1) Offense variable 10 is exploitation of a vulnerable victim. Score offense variable 10 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) Predatory conduct was involved ........................................................... 15 points

* * *

(d) The offender did not exploit a victim's vulnerability ............................ 0 points

* * *

(3) As used in this section:

(a) "predatory conduct" means preoffense conduct directed at a victim, . . . for the primary purpose of victimization

Certain factors can indicate evidence of predatory conduct. See *People v Witherspoon*, 257 Mich App 329, 334-336; 670 NW2d 434 (2003) (affirming an assessment of 15 points for OV 10 because "the timing of the assault (when no other persons were present) and its location (in the isolation and seclusion of the basement) are evidence of preoffense predatory conduct.").

Vulnerabilities "may arise not only out of a victim's characteristics, but also out of a victim's . . . circumstances." *People v Huston*, 489 Mich 451, 464; 802 NW2d 261 (2011).

The carjacking took place in the early morning when it was still dark. Jones was walking to her car, alone, on a private residential street. Her vehicle was already running, and she was leaving for work just as she did most mornings. The victim saw defendant's gun as he held his hand over her mouth and told her not to scream while he demanded her purse and keys. Although defendant argues that this was a crime of opportunity, it is reasonable to infer from the evidence that defendant had specifically targeted the victim and planned the encounter based on the circumstances at the time. Therefore, the trial court did not err when it scored OV 10. See *Huston*, 489 Mich at 464; *Witherspoon*, 257 Mich App at 334-336.

Affirmed.

/s/ Jane M. Beckering
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron