# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TRENT MICH HUMPHREYS-MCPHERSON,

        Defendant-Appellant.

UNPUBLISHED
March 28, 2017

No. 330747
Muskegon Circuit Court
LC No. 15-066031-FC

Before: STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his conviction of first-degree felony murder, MCL 750.316(1)(b). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to life imprisonment. We affirm.

## I. BACKGROUND

This case arises from the homicide of Dennis McPherson, defendant's grandfather, on January 9, 2015. According to testimony from defendant's then-fiancée, Kerri Crawford, she and defendant went to Dennis's home in the early morning hours so that defendant could ask Dennis for money to purchase cocaine. Defendant went into Dennis's home alone and returned with a television that they eventually sold for cocaine. Crawford, who was given a plea deal in exchange for her testimony, was a significant witness at trial. Over objection, she provided testimony after a 404(b) hearing, regarding other breaking and entering crimes committed by defendant and herself against her grandfather. Crawford's grandfather corroborated her testimony by both acknowledging the breaking and entry and identifying knives stolen from him which were found at defendant's residence.

Numerous other laypersons and law enforcement officers provided testimony. Forensic evidence was admitted regarding the victim's blood being found on a hatchet recovered secreted in the residence of defendant. Multiple witness offered testimony regarding a 10-year-old conflict between defendant and Dennis over the insurance proceeds from the death of defendant's father. Several of defendant's jail phone calls and letters were admitted into evidence that included admissions against interest. Defendant did not testify.

The parties contested the jury instructions. The prosecution requested and was given a non-standard jury instruction on the element of malice. Defendant requested but was denied

instructions on manslaughter. Both instructional issues were briefed and argued in open court. Subsequent to his conviction defendant raises two issues on appeal.

## II. MRE 404(B)

Defendant first argues that the trial court erred in allowing the submission of prior bad-acts evidence. Specifically, defendant argues that the trial court should not have allowed the introduction of evidence that he and Crawford committed two home invasions against Crawford's grandfather two weeks before Dennis's murder. We disagree.

## A. STANDARD OF REVIEW

"The decision whether evidence is admissible is within the trial court's discretion and should only be reversed where there is a clear abuse of discretion." *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). An abuse of discretion exists if a trial court's decision falls outside the range of principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). "However, where decisions regarding the admissibility of evidence involve preliminary questions of law such as whether a rule of evidence or statute precludes admissibility, our review is de novo." *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001). An evidentiary error only merits reversal where, after an examination of the entire record, "it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999); see also MCL 769.26.

## B. ANALYSIS

At trial, Crawford's grandfather testified that, on two occasions, his home was broken into and items were stolen. These home invasions occurred approximately two weeks before Dennis's murder. Knives collected from defendant and Crawford's bedroom after Dennis's death matched those stolen from Crawford's grandfather. Crawford also testified that she and defendant were responsible for the home invasions and that they had stolen the property in order to exchange it for cocaine.

Generally, relevant evidence is admissible. MRE 402; *People v Roper*, 286 Mich App 77, 91; 777 NW2d 483 (2009). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevant evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. "Assessing probative value against prejudicial effect requires a balancing of several factors, including the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). The determination of whether the probative value of the evidence is substantially outweighed by its prejudicial effect is best left to the trial court's contemporaneous assessment of the evidence. *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009).

Despite its relevancy, evidence of a person's character is generally not admissible to prove the propensity of a defendant to act accordingly. MRE 404(a). Michigan excludes such evidence for substantive purposes "to avoid the danger of conviction based upon a defendant's history of other misconduct." *People v Golochowicz*, 413 Mich 298, 308; 319 NW2d 518 (1982). However, MRE 404(b) provides that evidence of other crimes, wrongs, or acts may be admissible for other purposes:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [MRE 404(b)(1).]

For evidence of other acts to be admissible under MRE 404(b), it must be (1) offered for a proper purpose; (2) be relevant under MRE 402; and (3) not have a probative value substantially outweighed by its potential for unfair prejudice. *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993).

Evidence of misconduct similar to the charged crimes is relevant to demonstrate that the charged crimes occurred so long as the misconduct and charged crimes "are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63-64; 614 NW2d 888 (2000). "There must be *such a concurrence of common features* that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design." *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009). "The evidence of uncharged acts needs only to support the inference that the defendant employed the common plan in committing the charged offense." *People v Hine (After Remand)*, 467 Mich 242, 253; 650 NW2d 659 (2002). Although general similarity alone is not sufficient to establish a common plan, scheme, or system, "the plan need not be unusual or distinctive." *Sabin (After Remand)*, 463 Mich at 66 (quotation marks and citation omitted).

We conclude that the prior acts and the instant case bear sufficient similarity to suggest a common plan, scheme, or system. See *Hine (After Remand)*, 467 Mich at 253. In both instances, defendant and Crawford broke into a relative's home to acquire money or property to exchange for cocaine. Although the initial home invasions involved an unoccupied home and the home invasion involving Dennis's murder involved an occupied home, it is not required that the prior acts and the charged crimes share every detail. *Sabin (After Remand)*, 463 Mich at 64, 66. Given the "concurrence of common features" between the prior acts and the charged crime, a logical inference exists that the crimes in this case were part of a common plan or system of breaking into relatives' homes to steal property to sell or exchange for drugs. *Steele*, 283 Mich App at 479. Moreover, a trial court does not abuse its discretion in admitting other-acts evidence where "reasonable persons could disagree on whether the charged and uncharged acts contained sufficient common features to infer the existence of a common system used by defendant in committing the acts." *Sabin (After Remand)*, 463 Mich at 67. For these reasons, we conclude that the other-acts evidence was admitted for a proper purpose. Moreover, the evidence was

logically relevant as to defendant's intent and motive in entering Dennis's home, as well as to whether defendant committed the charged acts as part of a common plan, scheme, or system.

In addition to being offered for a proper purpose and being relevant under MRE 402, the testimony must also satisfy the balancing test of MRE 403. See *id.* All relevant evidence is prejudicial; only unfairly prejudicial evidence should be excluded. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). The fact that defendant was previously involved with breaking and entering into a relative's home in order to steal property to exchange for drugs was highly probative because it was relevant to the issue of whether defendant broke into Dennis's home and stole his property as part of a common plan, scheme, or system. The evidence was also probative of defendant's intent and motive in visiting Dennis in order to acquire the means of obtaining more cocaine. As to prejudicial effect, Crawford's and her grandfather's testimonies regarding the December 2014 home invasions were a brief portion of a seven-day trial and were not particularly detailed or inflammatory. See *Blackston*, 481 Mich at 462. Additionally, any danger of unfair prejudice was minimized by the trial court's limiting instruction, in which the trial court specified that the evidence could only be considered in determining motive, intent, or whether defendant used a plan, system, or characteristic scheme that had been used before or since. See *VanderVliet*, 444 Mich at 74-75. Therefore, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. MRE 403. As such, the other-acts evidence was properly admitted under MRE 404(b).

## III. INSTRUCTIONAL ISSUES

Defendant next argues that the trial court erred when it declined to issue a jury instruction on voluntary manslaughter and, also erred in giving a non-standard instruction defining malice. We disagree.

## A. STANDARD OF REVIEW

Issues of law arising from jury instructions are reviewed de novo on appeal, but a trial court's determination whether an instruction was applicable to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). Reversal based on instructional error is merited only where the defendant demonstrates "that the asserted instructional error resulted in a miscarriage of justice." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010), citing *Lukity*, 460 Mich at 493-494. A miscarriage of justice occurs where "it is more probable than not that a different outcome would have resulted without the error." *Lukity*, 460 Mich at 495.

"In reviewing a trial court's jury instructions, this Court examines the instructions as a whole, and, even if there are some imperfections, there is no basis for reversal if the instructions adequately protected the defendant's rights by fairly presenting to the jury the issues to be tried." *People v Dumas*, 454 Mich 390, 396; 563 NW2d 31 (1997). However, defendant objected only to the non-standard second-degree murder instruction, not the non-standard first-degree felony murder instruction. As such, defendant's argument is unpreserved. We review unpreserved jury instruction challenges for plain error affecting the defendant's substantial rights. *People v Aldrich*, 246 Mich App 101, 124-125; 631 NW2d 67 (2001). Therefore, defendant may obtain relief only if "(1) error . . . occurred, (2) the error was plain, i.e., clear or obvious, (3) and the

plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## B. VOLUNTARY MANSLAUGHTER

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000) (quotation marks and citation omitted). Jury instructions must include all of the elements of the crimes charged and "must not exclude material issues, defenses, and theories if the evidence supports them." *People v Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000). Where the evidence supports a lesser included offense and a party so requests, an instruction on the lesser included offense should be given. *People v Pouncey*, 437 Mich 382, 387; 471 NW2d 346 (1991). Because voluntary manslaughter is a lesser included offense of murder, "when a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence." *People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003).

Voluntary manslaughter occurs where a defendant "act[s] out of a temporary excitement induced by an adequate provocation and not from the deliberation and reflection that marks the crime of murder." *People v Townes*, 391 Mich 578, 590; 218 NW2d 136 (1974). In other words, "homicide may be reduced to voluntary manslaughter if the circumstances . . . demonstrate that malice was negated by adequate and reasonable provocation, that the killing was done in the heat of passion, and that there was not a lapse of time during which a reasonable person could control his passions." *People v Etheridge*, 196 Mich App 43, 55; 492 NW2d 490 (1992). Provocation, for purposes of voluntary manslaughter, is only "that which would cause the *reasonable* person to lose control." *Pouncey*, 437 Mich at 389 (emphasis added).

The trial court did not err in refraining from instructing the jury as to voluntary manslaughter because the evidence does not support a voluntary manslaughter instruction. Evidence of a 10-year-old monetary dispute between defendant and Dennis regarding defendant's father's life insurance is not provocation sufficient to cause a reasonable person to lose control and murder. See *id.* Moreover, even if defendant had presented evidence of adequate provocation, a voluntary manslaughter instruction still would have been unsupported by the evidence because defendant had a significant amount of time for his passions to cool. See *Etheridge*, 196 Mich App at 55. Defendant was in Dennis's home for 30 minutes. Further, defendant chopped Dennis with a hatchet approximately 30 times in the head, neck, trunk, and extremities, and defensive wounds on Dennis's body indicate that he survived some initial blows and attempted to fight defendant. During this extensive struggle, defendant would have had sufficient time to reconsider his actions. Because the evidence heard at trial would not support finding defendant guilty of voluntary manslaughter, the trial court was correct in refusing the requested instruction. See *Pouncey*, 437 Mich at 387.

## C. NON-STANDARD INSTRUCTION ON MALICE

Finally, defendant argues that the trial court erred by providing the jury a non-standard instruction on the element of malice of first-degree felony murder. We disagree.

MCR 2.512(D)(2) requires that pertinent portions of the Michigan Model Criminal Jury Instructions must be given if "(a) they are applicable, (b) they accurately state the applicable law, and (c) they are requested by a party." Because defendant failed to specifically request the reading of M Crim JI 16.4, the standard jury instruction for first-degree felony murder, the trial court was not required to read the standard jury instruction. See MCR 2.512(D)(2)(c). Therefore, the non-standard jury instruction is sufficient so long as it fairly presented the issues to be tried and sufficiently protected the defendant's rights. See *Dumas*, 454 Mich 396.

The trial court instructed the jury that it must find that defendant had one of the three following states of mind in order to find defendant guilty of first-degree felony murder: "(a) he intended to kill Dennis McPherson, or (b) he intended to do great bodily harm to Dennis McPherson, or (3) he acted in wanton and willful disregard of the likelihood that the natural tendency of such behavior was to cause death or great bodily harm." Defendant argues that the standard jury instruction should have been given instead. The standard jury instruction defining malice states in relevant part: "[he / she] intended to kill, or [he / she] intended to do great bodily harm to *[name deceased]*, or [he / she] knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of [his / her] actions." M Crim JI 16.4(3). The malice element found in M Crim JI 16.4(3) reflects our Supreme Court's statement in *People v Dykhouse*, 418 Mich 488, 495; 345 NW2d 150 (1984), defining the third form of malice as "the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result." The definition of malice given by the trial court comports with the definition of malice set forth in *People v Aaron*, 409 Mich 672, 728; 299 NW2d 304 (1980), decided four years before *Dykhouse*. *Aaron* and *Dykhouse* have both been cited for their respective definitions of malice,[1] and neither has been overruled. Because the trial court instructed the jury on the definition of malice as set forth in an opinion of our Supreme Court that has not been overruled, we conclude that the trial court did not plainly err in declining to use the standard jury instruction.

Insofar as defendant's argument implies that the trial court erred by failing to define "wanton and willful," we similarly note that defendant did not request such an instruction and, in the absence of a request for such an instruction and in the absence of any dispute as to malice at trial, the trial court did not commit plain error in failing to define these terms. See *Carines*, 460 Mich at 763. Nevertheless, even if this Court were to determine that the trial court improperly instructed the jury with a nonstandard jury instruction, defendant is still not entitled to reversal because the error was harmless. See MCR 2.613(A) ("An error . . . or defect in *anything done or omitted by the court* or the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to

---

[1] Using *Aaron*'s malice definition: *People v Robinson,* 475 Mich 1, 14; 715 NW2d 44 (2006); *People v Datema*, 448 Mich 585, 601; 533 NW2d 272 (1995), reh den 449 Mich 1206 (1995); *People v Fyda*, 288 Mich App 446, 451; 792 NW2d 712 (2010), lv den 488 Mich 948 (2010); *People v Bailey*, 207 Mich App 8, 9; 523 NW2d 798 (1994), rev'd on other grounds 451 Mich 657 (1996); *People v Langworthy*, 416 Mich 630, 650-651; 331 NW2d 171 (1982).

Using *Dykhouse*'s malice definition: *People v Reese*, 491 Mich 127, 154-155; 815 NW2d 85 (2012); *People v Gillis*, 474 Mich 105, 138; 712 NW2d 419 (2006); *Mendoza*, 468 Mich at 540; *People v Ramsey*, 422 Mich 500, 517; 375 NW2d 297 (1985).

take this action appears to the court inconsistent with substantial justice.") (emphasis added). In the present case, defendant chopped Dennis with a hatchet approximately 30 times, and defensive wounds on Dennis's body indicate that Dennis survived some initial blows. The extensive violence of this attack is sufficient to demonstrate malice under both the *Aaron* and *Dykhouse* definitions, as it cannot be seriously contended in this case that defendant was not subjectively aware that chopping a person with a hatchet in the head, neck, and torso 30 times would cause serious bodily injury or death. Further, defense counsel argued only that defendant was not present at the home and did not dispute that the murderer acted with malice.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola